UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CHRISTINE MARAIS,**

        **Plaintiff,**

    v.                                       **Case No.: 2:11-cv-314**
                                                     **JUDGE SMITH**
                                                     **Magistrate Judge Abel**

**CHASE HOME FINANCE, LLC,**

        **Defendant.**

<u>**OPINION AND ORDER**</u>

This matter is before the Court on the Motion for Judgment on the Pleadings filed by Defendant Chase Home Finance, LLC ("Chase") as to Plaintiff Christine Marais' claims arising out of a loan servicing arrangement between Plaintiff and Defendant. The motion is fully briefed and ripe for review. For the following reasons, the Court **GRANTS** Defendant's Motion for Judgment on the Pleadings on Plaintiff's federal claims. The Court declines to exercise jurisdiction over the remaining state law claims and therefore **DISMISSES** the case in its entirety.

**I.**    **BACKGROUND**

On or about September 25, 2006, Plaintiff executed a promissory note and mortgage for the purpose of financing a residential property in Franklin County, Ohio. The promissory note was between Plaintiff and Residential Finance Corporation, designated as the "lender." Although the timing is unclear from the pleadings, at some point Defendant became the "servicer" of Plaintiff's loan.

On January 3, 2011, Plaintiff sent a letter, designated as a "Qualified Written Request" (QWR) to Defendant. The letter stated that it was being sent pursuant to the Real Estate Settlement and Procedures Act (R.E.S.P.A.) 12 U.S.C. 1605(e) and requested information relating to Plaintiff's loan. The QWR specifically requested information such as the amount owed on the loan, the identity of the "current holder" of the loan and the date on which the current holder obtained the loan, the date Defendant began servicing the loan, and a breakdown of all charges accrued on the account. In her QWR, Plaintiff disputed all late fees and other charges and noted that Defendant had refused to give her a loan modification for which she was qualified. Plaintiff also noted that Defendant had failed to provide a copy of the Note which had been requested by Plaintiff on November 22, 2010. Plaintiff requested receipt of all documents within sixty days, as required under 12 U.S.C. §2605(e).

By letter dated January 7, 2011, Defendant acknowledged receipt of Plaintiff's request. Defendant then sent a letter dated February 28, 2011, to Plaintiff. According to the letter, Defendant was enclosing copies of the Note, Security Instrument, Loan Transaction History, Escrow Disclosure Statements, Appraisal and Payoff Quote. (Doc. 2-3). The letter further stated that any information which was requested but not included was either unavailable or considered proprietary and would not be provided. (*Id*). Although requested by Plaintiff, the Defendant's letter did not provide the identity of the owner of Plaintiff's loan, did not provide information related to the correctness of Plaintiff's account, and did not provide any contact information for an employee who could provide assistance to the Plaintiff. (Complaint ¶ 23-27).

Plaintiff alleges that between August 13, 2009, and January 13, 2009, she made excess payments totaling approximately $574.89 which Defendant failed to credit to Plaintiff's principal balance. She further alleges that on November 26, 2007, Defendant received $221.21

for Plaintiff's account which was not credited to her principal balance.  According to Plaintiff, rather than crediting her account, Defendant kept these payments for its own benefit.

On April 12, 2011, Plaintiff filed the instant suit against Defendant.  In her Complaint, Plaintiff alleges claims for violation of the Truth In Lending Act (TILA), 15 U.S.C. §1641(f)(2), the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §2605(e)(2), the Ohio Consumer Sales Practices Act, Ohio Rev. Code §1345.01, *et seq.*, and for common law conversion.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the pleadings."  It is well-settled that the standard of review for a motion for judgment on the pleadings under Rule 12(c) is the same as that used to address a motion to dismiss under Rule 12(b)(6).  *See, e.g., Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987) (noting that where a Rule 12(b)(6) defense of failure to state a claim upon which relief can be granted is raised by a Rule 12(c) motion for judgment on the pleadings, the Court must apply the standard for a Rule 12(b)(6) motion).

Rule 12(b)(6) permits dismissal of a lawsuit for "failure to state a claim upon which relief can be granted."  A Rule 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it.  *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983).  The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim.  Consequently, a complaint will be dismissed pursuant to Rule 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief.  *See*

3

*Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978).  Rule 12(b)(6) must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure, which requires the complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]"

A court, in considering a Rule 12(b)(6) motion to dismiss, must "construe the complaint in the light most favorable to the plaintiff," accepting as true all the plaintiff's factual allegations.  *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  Although in this context all of the factual allegations in the complaint are taken as true, a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Furthermore, to survive dismissal pursuant to Rule 12(b)(6), a claim must contain sufficient factual matter to "state a claim to relief that is plausible on its face."  *Twombly*, at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, at 1950.  While a complaint need not contain "detailed factual allegations," its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."  *Twombly*, at 555.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' " *Iqbal*, at 1950 (quoting Fed. Rule Civ. Proc. 8(a)(2)).  In the final analysis, the task of determining plausibility is "context-

4

specific [and] requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Accordingly, the Court will grant a motion for judgment on the pleadings if there is an absence of law to support a claim of the type made, or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. *Little v. UNUM Provident Corp.*, 196 F. Supp.2d 659, 662 (S.D. Ohio 2002) (Graham, J.) (citing *Rauch*). Stated differently, "[f]or purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citations and quotation marks omitted).

### III. DISCUSSION

Defendant Chase moves for judgment on Plaintiff's Complaint. Defendant argues that the Plaintiff's complaint fails to state a claim for violation of any statutory provisions and has failed to allege the elements necessary for a conversion claim.

#### A. Truth In Lending Act

The TILA was enacted to "promote the informed use of credit by consumers by requiring meaningful disclosure of credit terms." *Barrett v. J.P. Morgan Chase Bank, N.A.*, 445 F.3d 874, 875 (6th Cir. 2006) (citing *Begala v. PNC Bank, Ohio N.A.*, 163 F.3d 948, 950 (6th Cir. 1998)). The TILA is remedial statute and should therefore be given "broad, liberal construction in favor of the consumer." *Begala*, 163 F.3d at 950. Plaintiff brings her claim pursuant to Sections 1640(a) and 1641(f)(2).

5

> 15 U.S.C. §1640(a) governs civil liability under the TILA and provides in pertinent part:
>
> Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this chapter . . . including any requirement under section subsection (f) or (g) of section 131 [15 USCS § 1641], . . .is liable.
>
> 15 U.S.C. §1641 (f)(2) provides:
>
> Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation.

Although the Act does not contain a time limit for providing the information, courts have concluded that a violation occurs either after a "'reasonable time has passed since the obligor sent a request without the servicer having sent any response, or . . .when the servicer sends an inadequate response to that request." *See Bradford v. HSBC Mortg. Corp.*, 829 F. Supp. 2d 340, 352 (E.D. Va. 2011) (citing *Ording v. BAC Home Loans*, No.  ,2011 U.S. Dist. LEXIS 83269 (D. Mas. Jan. 10, 2011(the requested information must be sent within a reasonable time); *Stephenson v. Chase Home Finance, LLC*, No. 10cv2639, 2011 U.S. Dist. LEXIS 54791 (S.D. Cal. May 23, 2011)(inadequate response as basis of cause of action).

Plaintiff asserts that Defendant is liable under these provisions of the TILA for failing, despite her written request, to provide her with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation. Defendant moves to dismiss this claim on the grounds that the TILA does not provide a cause of action against an entity that is a mortgage "servicer" only.

Section 1640(a) provides that civil liability may be imposed against any *creditor* who fails to comply with section 1641(f). This provision of TILA was added in 2009 in order to "create a private right of action against creditors for a violation of Section 1641(f)(2)." *Davis v.*

6

*Greenpoint Mortg. Funding, Inc.*, No. 1:09cv2719, 2011 U.S. Dist. LEXIS 151992 (N.D. Ga., Mar. 1, 2011). The TILA also makes it clear that a servicer of a consumer obligation arising from a consumer credit transaction "shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation." 15 U.S.C. §1641(f)(1). The statute therefore provides a cause of action against the creditor for the failures of its mortgage servicers, but does not create a private cause of action against the servicer, unless the servicer is also alleged to be the creditor or assignee of the original loan. *See e.g.*, *Khan v. Bank of N.Y. Mellon*, 849 F. Supp. 2d 1377 (S.D. Fla. Mar. 19, 2012) (quoting 15 U.S.C. § 1640(a)); *Payton v. New Century Mortg. Corp.*, No. O3C333, 2003 U.S. Dist. LEXIS 1836611 (N.D. Ill Oct. 14, 2003)(TILA "expressly disclaims any liability for mere servicers 'unless the servicer is or was the owner of the obligation.'").

Plaintiff, however, urges this court to impose liability on Defendant on the grounds that the failure to do so will lead to potentially inequitable results. According to Plaintiff, if TILA does not extend liability to a servicer for failing to provide information to an obligor, then a servicer could purposely hide the identity of the creditor from the obligor and thereby prevent the obligor from pursuing a claim against the creditor. The court agrees with the Plaintiff that the result of limiting liability to the creditor may in fact lead to inequitable results. *See Holcomb v. Fed. Home Loan Mortg. Corp.*, No. 10-81186, 2011 U.S. Dist. LEXIS 123935 (S.D. Fla Oct. 26, 2011) ("TILA presents an apparent conundrum by imposing an obligation on servicers to provide information on request but also absolving servicers of any liability under TILA where the servicers are not also the owners of the obligations."). Despite the potential inequity, the Court is bound to follow the plain language of the statute and declines to expand liability beyond

7

that which is clearly contained within the Act.  If Congress intended to impose liability on the servicer for the failure to provide the requested information, it would not have limited liability to "creditors" in Section 1640(a). *See Kelly v. Fairon & Assoc.*, 842 F. Supp. 2d 1157, 1162 (D. Minn 2012)(had Congress intended to hold servicers liable, it would have included the word "Servicer" in section 1640(a)).

Accordingly, Plaintiff may not maintain a cause of action against the Defendant for violations of TILA, and Defendant's Motion to Dismiss this claim is **GRANTED**.

    **B.**    **Real Estate Settlement Procedures Act (RESPA)**

RESPA was enacted in order to insure greater protection of consumers from abusive practices related to the real estate settlement process. 12 U.S.C §2601(a).  Accordingly, RESPA contains numerous provisions relating to the necessary disclosures that must be made as part of any real estate settlement procedure.  Section 2605(e) of RESPA requires a loan servicer to provide a written response to a borrower's "Qualified Written Request" ("QWR") for information related to the borrower's loan.  12 U.S.C. § 2605(e)(1)(B).  Under the Act, a QWR must: 1) be a "written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer"; 2) includes or enables the servicer to identify the borrower's name and account; and 3) includes a "statement of the reason's for the borrower's belief, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B)(i)(ii).

Upon receipt of a QWR, the loan servicer has twenty days to acknowledge receipt of the QWR.  12 U.S.C. §2605(e)(1)(B)(A).  Thereafter, the loan servicer has sixty days in which to respond to the QWR. The loan servicer's response must either: 1) take corrective action, inform

the borrower that corrective action has been made, and provide the borrower with the "name and telephone number of a representative of the servicer who can provide assistance to the borrower" (12 U.S.C. §2605(e)(2)(A)); 2) after investigation, provide the borrower with a written explanation that includes, "a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer" and "the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower (12 U.S.C. §2605(e)(2)(B)(i)(ii)); or 3) after investigation, provide written explanation that includes "information requested by the borrower or an explanation of why the requested information is unavailable," and "the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower." (12 U.S.C. §2605(e)(2)(C). During the sixty day period in which the servicer is responding to the QWR, it may not report any information of an overdue payment related to a QWR to consumer reporting agencies. *See* 12 U.S.C. §2605(e)(3). A loan servicer who fails to comply with any provision of the section shall be liable to the borrower in an amount equal to his or her actual damages. 12 U.S.C. §2605(f)(1)(A). A plaintiff may recover statutory damages in the case of a pattern or practice of noncompliance. 12 U.S.C. §2605(f)(1)(B).

Plaintiff alleges that Defendant violated two sections of RESPA. First, Plaintiff alleges a violation of section 2605(e)(2) for failing to provide Plaintiff with an adequate response to her QWR. In her QWR, Plaintiff requested a plethora of information related to her mortgage, including the identity of the current mortgage holder, the monthly principal and interest payments, a breakdown of any shortage in the escrow account, and a transaction history. (Doc. 2-1). The QWR also stated that Plaintiff believed her account was in error because she had made

9

payments between 2008 and 2009 that were misapplied or declared late and that she received late fees in violation of a written repayment agreement. (*Id*). In response to her QWR, Defendant sent a letter in which it simply acknowledged receipt of the QWR and enclosed copies of the: 1) Note, 2) Security Instrument, 3) Loan Transaction History, 4) Escrow Disclosure Statements, 5) Appraisal, and 6) Payoff Quote.   Defendant's letter did not contain a written explanation for many of Plaintiff's questions, did not address her allegations that her payments were misapplied or that she was erroneously charged late fees, and directed Plaintiff to call the general consumer services phone number with any questions.

As regards Plaintiff's claim under section 2605(e)(2), the Defendant does not deny that the QWR was technically deficient.  Rather, Defendant argues that Plaintiff cannot state a claim for violation of section 2605(e)(2) because she has failed to plead "actual damages" as a result of any failure to respond to the QWR.  Defendant is correct in its assertion that actual damages must be pled as part of any RESPA claim. *See*, *Battah v. ResMAE Mortg. Corp*., 746 F. Supp. 2d 869, 876 (E.D. Mich. Oct. 28, 2010)(In order to successfully plead a RESPA claim, plaintiff must allege actual damages which resulted from the failure to respond to Plaintiff's QWR);(*Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D.N.J. 2006) (A plaintiff must allege that the loan servicer's breach of RESPA duties resulted in actual damages); *Webb v. Chase Manhattan Mortg. Corp.*, No. 2:05-cv-0548, 2008 U.S. Dist. LEXIS 42559 (S.D. Ohio May 28, 2008) (a plaintiff must establish actual damages in order to state a claim under RESPA).  Moreover, while the requirement for actual damages is liberally interpreted[1],  any

---

[1] For instance, "actual damages" under the statute, therefore, may include mental anguish (*Rawlings v. Dovenmuehle Mortg., Inc*., 64 F. Supp. 2d 1156 (M.D. Ala., 1999)), as well as lost time and inconvenience and late fees. *See, Johnstone v. Bank of America, N.A.*, 173 F. Supp. 2d 809, 813-816 (N.D. Ill, 2001).

10

alleged loss must clearly be related to the RESPA violation itself.  *See Lal v. Am. Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010).

In her complaint, Plaintiff alleges that she suffered actual damages of approximately $800.00 because Defendant misapplied her mortgage payments.  Plaintiff adds to her claim for actual damages within her Response, stating that she also incurred interest charges as a result of the failure to credit Plaintiff's principal balance as well as expenses incurred in sending the QWR.  Defendant asserts that none of these claims for damages are sufficient to state a RESPA claim.

As regards the Plaintiff's contention that her actual damages were the approximately $800.00 in misapplied funds, the Court disagrees.  The Plaintiff allegedly made these excess payments two years before she ever sent the QWR.  Yet in order to state a claim under RESPA, the Plaintiff must establish a "causal link between the financing institution's violation and their injuries." *McLean v. GMAC Mortg. Corp.*, 398 Fed. Appx. 467, 471 (11th Cir. 2010).  While Plaintiff may in fact have been damaged by making excess payments that were unaccounted for, the damage was not caused by the Defendant's failure to respond to her QWR.  Rather, the damage was caused by the Defendant's alleged misappropriation of Plaintiff's payments.  Thus, Plaintiff has failed to sufficiently allege a causal link between the failure of Defendant to respond to the QWR and her overpayment of some $800.00.[2]

Second, Plaintiff alleges that Defendant violated section 2605(e)(3) by improperly providing information about her alleged overdue payments to consumer reporting agencies

---

[2] Arguably, Plaintiff may have incurred a cost associated with preparing her QWR. However, the cost of preparing a QWR is not incurred as a result of a failure to respond to the QWR. There is no causal link between the failure to respond to a QWR and the cost of preparing a QWR. Accordingly, this cannot form the basis of a RESPA claim.

during the sixty day period after Defendant received the QWR. Plaintiff does not allege that this reporting negatively affected her credit rating or in some way limited her ability to secure financing. Defendant does not deny that it made reports to consumer reporting agencies during the prohibited sixty day time period. Although Defendant does not directly address Plaintiff's claim under this section of RESPA, presumably Defendant relies on to allege actual damages as its response to this claim as well. The Court finds that just as with a claim under section 2605(e)(2), Plaintiff must plead actual damages a result of a particular violation of RESPA. Here, while she alleges that Defendant violated the statute by reporting her to credit agencies, she does not allege that she was harmed in anyway by such reporting. Yet, without an allegation that inaccurate credit information was released to, and used by, a third party, Plaintiff does not state a claim for actual damages arising out of a credit report. *See, Johnstone v. Bank of America, N.A.*, 173 F. Supp. 2d 809, 813-816 (N.D. Ill, 2001) (mere allegation of inaccurate credit report without allegation that the information was relied on and used by a third party was not sufficient to allege actual damages). Because Plaintiff has failed to allege damages for Defendant's violations of RESPA, Plaintiff cannot maintain her claim and Defendant's Motion for Judgment on the Pleadings as to the RESPA claim is **GRANTED**.

      c.     **Remaining State Law Claims**

A district court may decline to exercise supplemental jurisdiction over state law claims once it has dismissed all claims over which it possessed original jurisdiction. *See Midwest Towing & Recovery, Inc. v. City of Lancaster*, No. 2:09-cv-1142, 2011 U.S. Dist. LEXIS 9387 (S.D. Ohio Jan. 26, 2011)(citing *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d. 226, 233 (6th Cir. 1997). The Sixth Circuit has further stated that generally where the federal claims are dismissed before trial, the state law claims should be dismissed as well. *See Brandenburg v. Hous. Auth of Irvine,* 253 F.3d 891, 900 (6th Cir. 2001)(the "usual course is for the district

court to dismiss the state-law claims without prejudice if all federal claims are disposed of on summary judgment). Having dismissed Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims asserted against Defendant, and those are dismissed as well.

## IV.     Conclusion

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings is **GRANTED.**

The Clerk shall remove Document 15 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

**IT IS SO ORDERED.**


*s/ George C. Smith*

**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**