**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTINE MARAIS, | : | CASE NO. 2:11-cv-314 |
| | : | |
| Plaintiff, | : | Judge George C. Smith |
| | : | |
| vs. | : | Magistrate Judge Mark. R. Abel |
| | : | |
| CHASE HOME FINANCE LLC, | : | |
| | : | |
| Defendant. | : | |

**<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

Now comes Defendant JPMorgan Chase Bank, N.A., successor by merger to Chase Home Finance LLC, ("Chase"), by and through counsel, and pursuant to Fed.R.Civ.P. 56 hereby moves the Court for an Order granting Chase summary judgment on the sole claim of Plaintiff Christine Marais ("Marais") remaining in this action, for alleged violation(s) of the Real Estate Settlement Procedures Act [12 U.S.C. §§ 2601 et seq.] ("RESPA"). A memorandum in support of this Motion is attached hereto.

Respectfully submitted,

/s/ Daniel C. Gibson
Daniel C. Gibson (0080129)
Bricker & Eckler LLP
100 South Third Street
Columbus, Ohio 43215
Telephone: (614) 227-2300
Facsimile:  (614) 227-2390
dgibson@bricker.com
Trial Attorney for Defendant JPMorgan Chase Bank, N.A.,
successor by merger to Chase Home Finance LLC

OF COUNSEL:

Nelson M. Reid            (0068434)
Bricker & Eckler LLP
100 South Third Street
Columbus, Ohio 43215-4291
Telephone:  (614) 227-2300
Facsimile:  (614) 227-2390
Email:  nreid@bricker.com

7055775v1

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................ iii

MEMORANDUM IN SUPPORT .................................................................................................. 1

I.     INTRODUCTION ................................................................................................................ 1

II.    SUMMARY OF ARGUMENT ........................................................................................... 2

III.   STATEMENT OF UNDISPUTED FACTS ........................................................................ 4

IV.   STANDARD OF REVIEW ................................................................................................. 6

V.    ARGUMENT ....................................................................................................................... 7

    A.   Chase is entitled to summary judgment because it complied with RESPA ............ 7

        1.   Chase's QWR response was legally sufficient ............................................. 7

            a.   Chase satisfied the requirements of § 2605(e)(2)(C) ...................... 9

            b.   Chase satisfied the requirements of § 2605(e)(2)(B) .................... 11

        2.   Chase did not violate the credit reporting provisions of § 2605(e)(3) ................................................................................................. 13

    B.   Chase is entitled to summary judgment because Marais cannot show that she suffered any actual damages as the result of a violation of RESPA .............. 15

        1.   Marais' inadequate Rule 26(a)(1)(A)(iii) disclosure precludes her from submitting any evidence of damages ................................................ 17

        2.   Marais suffered no damages as a result of Chase's alleged violation(s) of RESPA .......................................................................... 23

            a.   Marais suffered no additional interest damages relating to her allegedly misapplied payments as a result of Chase's alleged violation .......................................................................... 23

                i.   Marais suffered no additional interest damages ................ 23

                ii.   Even if Marais had paid additional interest, it could not have been the result of Chase's alleged violation ........ 25

       b.      Marais' expenses in sending the QWR cannot be actual damages.........................................................................................27

       c.      Marais cannot prove she suffered damages resulting from alleged wrongful credit reporting...................................................30

VI.      CONCLUSION............................................................................................32

CERTIFICATE OF SERVICE .................................................................................34

# TABLE OF AUTHORITIES

Page

**CASES**

*Alloys International, Inc. v. Aeronca, Inc.*, No. 1:10-cv-293, 2011 U.S. Dist. LEXIS
119687 (S.D. Ohio Oct. 17, 2011) ................................................................... 18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ....... 6, 7

*BAC Home Loans Servicing LP v. Fall Oaks Farm LLC*, 848 F.Supp. 2d 818 (S.D. Ohio
2012) ............................................................................................................... 17

*Baehl v. Bank of America, N.A.*, No. 3:12-cv-00029-RLY-WGH, 2013 U.S. Dist. LEXIS
46445 (S.D. Ind. Mar. 25, 2013) ..................................................................... 26

*Bessemer & Lake Erie Railroad Co. v. The Pittsburgh and Conneaut Dock Co.*, 596 F.3d
357 (6th Cir. 2010) .......................................................................................... 17

*Big Lots Stores, Inc. v. Luv N' Care, Ltd.*, No. 07-4296, 2008 U.S. App. LEXIS 24607
(6th Cir. Dec. 4, 2008) .................................................................................... 17

*Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469 (2d Cir. 1995) ........................................ 28, 31

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ...................... 6

*City of Rome v. Hotels.com, L.P.*, No. 12-14588, 2013 U.S. App. LEXIS 24745
(11th Cir. Dec. 13, 2013) ................................................................................ 19, 20

*Cortez v. Keystone Bank, Inc.*, No. 98-2457, 2000 U.S. Dist. LEXIS 5705, (E.D. Pa.
May 2, 2000) ................................................................................................... 30

*Crabill v. Trans Union, L.L.C.*, 259 F.3d 662 (7th Cir. 2001) ............................................... 31

*DeVary v. Countrywide Home Loans, Inc.*, 701 F.Supp. 2d 1096 (D. Minn. 2010) ........... 8, 10, 13

*Devonshire v. Johnston Group First Advisors*, 338 F.Supp. 2d 823 (N.D. Ohio 2006) ......... 27, 28

*Dunkle v. The Bank of New York Mellon*, No. 3:11-cv-1242, 2013 U.S. Dist. LEXIS
66359 (M.D. Tenn. Apr. 16, 2013) ................................................................. 30

*Eichholz v. Wells Fargo Bank, N.A.*, No. 10-cv-13622, 2011 U.S. Dist. LEXIS 128455
(E.D. Mich. Nov. 7, 2011) ............................................................................. 9, 26, 28

*First Comics, Inc. v. World Color Press, Inc.*, 884 F.2d 1033 (7th Cir. 1989) ........................... 24

*Ford v. New Century Mortgage Corporation*, 797 F.Supp. 2d 862 (N.D. Ohio 2011) .......... 23, 26

*Giannetta v. Boucher*, No. 92-1488, 1992 U.S. App. LEXIS 33313 (1st Cir.
December 22, 1992) ........................................................................................ 31

*Greene v. Doruff*, 660 F.3d 975 (7th Cir. 2011) .................................................................. 26, 27

*Guidi v. Paul Financial, LLC*, No. 13-CV-01919-LHK, 2014 U.S. Dist. LEXIS 2249
(N.D. Cal. Jan. 7, 2014) ............................................................................................ 14

*Hines v. Franklin S&L*, No. 1:09-cv-914, 2011 U.S. Dist. LEXIS 24500 (S.D. Ohio
Jan. 31, 2011) ............................................................................................................ 17

*Houston v. U.S. Bank Home Mortgage Wisconsin Servicing*, No. 11-2444, 2012 U.S.
App. LEXIS 24196 (6th Cir. November 20, 2012) ................................................... 16

*In re Grandberry v. Bank of America, N.A.*, No. 109-07056, Adv. No. 112-90611, 2013
Bankr. LEXIS 5242 (M.D. Tenn. Bankr. Dec. 13, 2013) ......................................... 30

*Johnstone v. Bank of America*, 173 F.Supp. 2d 809 (N.D. Ill 2001) ...................................... 30, 31

*Knight-Bonner v. BAC*, Civil Action No. 11-13436, 2012 U.S. Dist. LEXIS 183878
(E.D. Mich. October 19, 2012) ................................................................................. 14

*Lawther v. OneWest Bank, FSB*, No. C-10-00054 (JCS), 2012 U.S. Dist. LEXIS 12062
(N.D. Cal. Feb. 1, 2012) ............................................................................................. 8

*Marais v. Chase Home Finance LLC*, 736 F.3d 711 (6th Cir. 2013) .................................... 16, 27

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,
106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) ............................................................... 6, 7

*Mattison v. PNC Bank, N.A.*, No. 3:13-cv-061, 2013 U.S. Dist. LEXIS 106721
(S.D. Ohio July 30, 2013) ......................................................................................... 16

*McDonald v. OneWest Bank, FSB*, 929 F.Supp. 2d 1079 (W.D. Wash. 2013) ..................... 24

*Merriweather v. CitiMortgage, Inc.*, No. 11-15515, 2012 U.S. Dist. LEXIS 137303
(E.D. Mich. September 25, 2012) ........................................................................... 9, 26

*Mohanna v. Jake Sweeney Automotive, Inc.*, No. 1:10-cv-00776, 2012 U.S. Dist.
LEXIS 97413 (S.D. Ohio July 13, 2012) ............................................................... 18, 19

*Newton v. Bank of McKenney*, No. 3:11cv493-JAG, 2012 U.S. Dist. LEXIS 68731
(E.D. Va. May 16, 2012) ........................................................................................... 24

*Ogle v. BAC Home Loan Servicing LP*, 924 F.Supp. 2d 902 (S.D. Ohio 2013) .................... 16

*Pentax Corp. v. Robison*, 135 F.3d 760 (Fed. Cir. 1998) ...................................................... 25

*Pickens v. Liberty Mutual Ins. Co.*, No. 2:12-cv-1652-SLB, 2013 U.S. Dist. LEXIS
115377 (N.D. Ala. Aug. 15, 2013) ........................................................................ 28, 31

*Rawlings v. Dovenmuehle Mortgage, Inc.*, 64 F. Supp. 2d 1156 (M.D. Ala. 1999) .............. 29

*Ray v. Equifax Info. Servs., LLC*, No. 08-10879, 2009 U.S. App. LEXIS 7810
(11th Cir. April 13, 2009) ................................................................ 31

*Roth v. CitiMortgage, Inc.*, No. 12-CV-2446 (SJF) (WJW), 2013 U.S. Dist. LEXIS
131861 (E.D. N.Y. Sept. 11, 2013) .............................................. 15

*Ruffin-Thompkins v. Experion Info. Solutions, Inc.*, 422 F.3d 603 (7th Cir. 2005) ...................... 31

*Rupert v. Daggett*, 695 F.3d 417 (6th Cir. 2012) ............................................ 26

*Shaw v. Pfeiffer*, No. 2:05-CV-00176, 2006 U.S. Dist. LEXIS 63932 (S.D. Ohio Sept. 7,
2006) ......................................................................................... 6

*Skaggs v. HSBC Bank USA, N.A.*, No. 10-00247 JMS/KSC, 2011 U.S. Dist. LEXIS
98057 (D. Hawaii Aug. 31, 2011) ............................................... 30

*Stewart v. Independent Sch. Dist. No. 196*, 481 F.3d 1034 (8th Cir. 2007) .............................. 28

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989) ...................................... 7

*Tritt v. Automatic Data Processing, Inc.*, No. 3:06-CV-2065, 2012 U.S. Dist. LEXIS
113590 (D. Conn. Aug. 11, 2012) ............................................... 26

*Tsakanikas v. JPMorgan Chase Bank, N.A.*, No. 2:12-CV-888, 2012 U.S. Dist. LEXIS
172058 (S.D. Ohio Dec. 4, 2012) ........................................... 16, 30

*United States v. Golden Ship Trading Co.*, 25 C.I.T. 40 (U.S. C.I.T. 2001) ............................. 25

*United States v. Rosa-Ortiz*, 348 F.3d 33 (1st Cir. 2003) ....................................... 25

*Van Egmond v. Wells Fargo Home Mortgage*, No. SACV 12-0112 (MLGx), 2012 U.S.
Dist. LEXIS 42061 (C.D. Cal. Mar. 21, 2012) .......................... 10, 26

*Vassalotti v. Wells Fargo Bank, N.A.*, 732 F. Supp. 2d 503 (E.D. Pa. 2010) ..................... 23, 32

*Watt v. GMAC Mortg. Corp.*, 457 F.3d 781 (8th Cir. 2006) ......................................... 29

*Webb v. Chase Manhattan Mortgage Corp.*, No. 2:05-cv-0548, 2008 U.S. Dist. LEXIS
42559 (S.D. Ohio May 28, 2008) ................................................. 17

*Weinert v. GMAC Mortgage Corp.*, No. 08-cv-14482, 2009 U.S. Dist. LEXIS 89881
(E.D. Mich. September 29, 2009) ............................................. 9, 26

## STATUTES

12 U.S.C. §§ 2601 et seq. ..................................................................... 1

12 U.S.C. § 2605 ........................................................................ 1, 22

12 U.S.C. § 2605(e) ............................................................................................................ 16

12 U.S.C. § 2605(e)(1) ......................................................................................................... 8

12 U.S.C. § 2605(e)(2) ............................................................................................ 1, 7, 9, 26

12 U.S.C. § 2605(e)(2)(A) .................................................................................................... 3

12 U.S.C. § 2605(e)(2)(A)-(C) ...................................................................................... 8, 26

12 U.S.C. § 2605(e)(2)(B) ........................................................................................... passim

12 U.S.C. § 2605(e)(2)(C) ........................................................................................... passim

12 U.S.C. § 2605(e)(3) ................................................................................................. passim

12 U.S.C. § 2605(f) ..................................................................................................... 15, 16

12 U.S.C. § 2605(f)(1) ....................................................................................................... 15

12 U.S.C. § 2605(f)(1)(A) ...................................................................................... 15, 25, 28

12 U.S.C. § 2605(i)(3) .......................................................................................................... 8

15 U.S.C. §§ 1681 et seq. ................................................................................................... 29

18 U.S.C. § 751(a) .............................................................................................................. 25

19 U.S.C. § 1592(d) ........................................................................................................... 25

**RULES**

Fed.R.Civ.P. 26(a) .................................................................................................. 18, 19, 22

Fed.R.Civ.P. 26(a)(1) ......................................................................................................... 17

Fed.R.Civ.P. 26(a)(1)(A)(iii) ....................................................................................... passim

Fed.R.Civ.P. 26(f) .............................................................................................................. 19

Fed.R.Civ.P. 26(g)(1)(A) .................................................................................................... 18

Fed.R.Civ.P. 37(c) ................................................................................................. 3, 17, 22

Fed.R.Civ.P. 56(c) ................................................................................................................ 6

<u>MEMORANDUM IN SUPPORT</u>

**I.    <u>INTRODUCTION</u>**

The undisputed facts and unambiguous law governing this dispute reveal that Plaintiff Christine Marais, ("Marais"), cannot prevail on her sole remaining claim against Defendant JPMorgan Chase Bank, N.A., successor by merger to Chase Home Finance LLC, ("Chase"), for alleged violation(s) of the Real Estate Settlement Procedures Act [12 U.S.C. §§ 2601 et seq.] ("RESPA"). As a result, Chase is entitled to summary judgment.

The undisputed facts show that Chase complied with RESPA when it sent a timely and substantively proper response to Marais' "qualified written request," (the "QWR"), under § 2605(e)(2), and that Chase did not fail to adhere to the credit reporting obligations set forth in § 2605(e)(3). The undisputed facts also show that Marais cannot demonstrate that she suffered any actual damages whatsoever as a result of the alleged violation(s), which are a required element of any § 2605 RESPA claim.

While Chase's Motion is lengthy, that is because there are so many alternative grounds upon which the Court could and should grant summary judgment to Chase, and because Marais' failure to abide by the initial disclosure requirements in Fed.R.Civ.P. 26(a)(1)(A)(iii) and her evasive discovery responses have forced Chase to address every *possible* damages theory on which Marais might rely.

Nonetheless, as Chase demonstrates below, Marais cannot prove her claim under any theory of liability or any theory of damages. Because the law and the undisputed facts show that there is no genuine dispute of any material fact and that Chase is entitled to judgment as a matter of law, this Court should grant Chase summary judgment in full on the sole remaining claim in this action.

## II.    <u>SUMMARY OF ARGUMENT</u>

Chase is entitled to summary judgment, above all, because the undisputed facts show that it complied with RESPA.

First, Chase timely responded to Marais' QWR with a letter that provided her with information she had requested, an explanation as to why any information was not included, and contact information for Chase's Customer Service Department.  Chase's response satisfies 12 U.S.C. § 2605(e)(2)(C).  Because the duties under § 2605(e) of RESPA are in the disjunctive, this alone is sufficient.

Second, Chase timely responded to Marais' QWR with a letter that provided her with information that constitutes a written explanation as to why Chase believed her account was correct, and contact information for Chase's Customer Service Department.  Thus, Chase's response satisfies 12 U.S.C. § 2605(e)(2)(B) as well.

Third, Marais cannot prove that Chase violated the RESPA credit reporting moratorium at 12 U.S.C. § 2605(e)(3), because her letter, which merely referenced payments in 2008 and 2009 generally, did not constitute a sufficiently specific payment dispute to invoke the protections of the provision; because she has no evidence of wrongful credit reporting by Chase; and because her delinquency at the time of Chase's QWR response, by her own acknowledgment, related to the December 2010 overdue payment, which is not a payment protected by the credit reporting moratorium.

Chase is also entitled to summary judgment because Marais cannot prove she suffered any actual damages as a result of the alleged violation(s), which is a required element of any RESPA claim.

As an initial matter, Marais is precluded from introducing any evidence of damages because she violated Fed.R.Civ.P. 26(a)(1)(A)(iii)'s initial disclosure requirement that she provide "a computation of each category of damages claimed…," but instead simply asserted that she was seeking $1,000 in damages, without explanation.  Under Fed.R.Civ.P. 37(c), she is not permitted to submit evidence of damages that she failed to disclose, since such non-disclosure was both unjustified and prejudicial.

Second, Marais cannot prove she suffered actual additional interest damages as result of Chase's alleged violation.  Her admission that she has not made a payment since November 2010 prevents her from proving that she paid additional interest as a result of Chase's allegedly deficient QWR response, and the Note and Mortgage reveal that even if her payments had been applied as she claims they should have been, her subsequent payments would have been no different.  In addition, because the RESPA QWR response duty is in the disjunctive, and Marais' additional interest damages are based only on an alleged failure to correct her account pursuant to 12 U.S.C. § 2605(e)(2)(A), failure to perform only that option under the statute cannot be a "but for" cause of her damages, as RESPA requires.

Third, the costs of Marais' QWR cannot constitute damages resulting from a deficient response, because she has submitted no evidence of any such costs, because any such costs were incurred prior to the response, and because they are not an actionable loss in any event, since Marais received what she paid for, *i.e.*, the QWR itself—any such costs and expenses were not incurred as consideration given to Chase in exchange for a compliant response, and thus are not damages.

Finally, Marais cannot prove that she suffered any credit-related damages, because she identified no wrongful reporting and no pecuniary injury in her written discovery responses, let

alone evidence of injuries sustained solely due to reporting made within the 60-day QWR response window, as RESPA requires.

## III.    STATEMENT OF UNDISPUTED FACTS

On September 25, 2006, Marais executed a promissory note in favor of Residential Finance Corp, an Ohio Corporation, with an original principal balance of $177,600.00 to be repaid with interest at the fixed rate of 6.000% per annum over thirty years (the "Note"). Complaint, ¶ 15 (Doc. #1); Affidavit of Brandie Watkins ("Watkins Aff."), ¶ 5 (attached hereto as Exhibit A).  As part of the same transaction, Marais also executed a mortgage on the property located at 535 Piedmont Road, Columbus, Ohio 43214 (the "Property"), securing repayment of the Note (the "Mortgage").  *Id*.; Watkins Aff., ¶ 6.  Chase was the servicer of the loan at issue during the time periods relevant to this dispute.  Complaint, ¶ 12.

After making her November 2010 payment, Marais intentionally and voluntarily "suspended performance" and ceased making payments under the Note and Mortgage.  *See*, Plaintiff Christine Marais' Response to Defendant's First Set of Interrogatories ("Rog Response"), #7;  Response to Request for Admission ("RFA Response"), #8 (admitting no payment made since January 1, 2011) (both of which are contained in Plaintiff Christine Marais' Response to Defendant's First Set of Interrogatories, Request for Production of Documents and Request for Admissions, attached hereto as Exhibit B).  Marais has not made any payment on the loan since the November 2010 payment.  *Id*.

On or about January 3, 2011, Marais sent a letter (the "QWR") to Chase, which Chase subsequently received, that requested no fewer than twenty-two categories of information about Marais' loan and further stated that "I hereby dispute all late fees, charges, inspection fees, property appraisal fees, forced placed insurance charges, legal fees, and corporate advances

charged for this account.  Additionally, I believe that my account is in error for the following reasons: payments made during the year 2008 and 2009 [*sic*] were misapplied to the account or declared late when, in fact, they were timely.  Late fees were charged despite a written repayment agreement from Chase to the contrary."  Complaint, ¶ 18, Exhibit C; Answer, ¶¶ 18, 22 (Doc. #7).

Chase sent an initial response to Marais' QWR acknowledging receipt of the correspondence on January 7, 2011.  Deposition of Jeremy Summerford, ("Summerford Depo"),[1] p. 22 (Doc. #25); Complaint, ¶ 21.  After Chase sent the initial response on January 7, 2011, Chase assigned the responsibility for responding to Marais' letter to an employee, who researched Marais' letter, investigated Chase's systems in order to obtain information Marais had requested, and sent a subsequent response on February 28, 2011.  *Id*. at 22-23; Watkins Aff., ¶ 4.

The response from Chase to Marais enclosed copies of the promissory note, mortgage, loan transaction history, escrow disclosure statements, appraisal, and payoff quote for Marais' loan.  Watkins Aff., ¶ 4.  The February 28, 2011 response also included a statement that "[a]ny information or document requested but not included with this package is unavailable or considered proprietary," and further provided the direct phone number and a text telephone number for Chase's Customer Care/Customer Service Department.  *Id*.

On April 12, 2011, Marais commenced the present action.  *See*, Complaint.  On July 29, 2011, in her initial disclosures made under Fed.R.Civ.P. 26(a)(1)(A)(iii), Marais' disclosure with respect to her alleged damages under RESPA consisted entirely of the following statement: "Count Two: $1,000 plus attorney's fees and costs."  A copy of Marais' Initial Disclosures, documents excluded, is attached hereto as Exhibit C.  In response to written discovery, Marais

---

[1] The Summerford Depo (redacted per the Stipulated Protective Order) was filed with the Court by Marais on July 6, 2012.

did not identify a single negative credit report made by Chase as alleged in paragraph 28 of her Complaint.  Rog Response #'s 14 and 15.  In response to written discovery, Marais identified the following as "all of [her] alleged damages": "the amount of payments that have been converted and/or misapplied as set forth in her Complaint, emotional damages since 2007, and statutory damages…, in excess of $75,000."  Rog Response, #16.

## IV.    STANDARD OF REVIEW

"The standard governing summary judgment is set forth in Fed.R.Civ.P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will not lie if the dispute about a material fact is genuine; 'that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Shaw v. Pfeiffer*, No. 2:05-CV-00176, 2006 U.S. Dist. LEXIS 63932, *5 (S.D. Ohio Sept. 7, 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  "Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial."  *Id*. (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

Moreover, as this Court has noted, "[t]he Sixth Circuit Court of Appeals has recognized that *Liberty Lobby, Celotex*, and *Matsushita* have effected 'a decided change in summary judgment practice,' ushering in a 'new era' in summary judgments."  *Id*. (quoting *Street v. J.C.*

*Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989)). "[I]n responding to a summary judgment motion, the nonmoving party 'cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (citing *Street* quoting *Liberty Lobby*, 477 U.S. at 257). "The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion," and "it is not sufficient for the nonmoving party to merely 'show that there is some metaphysical doubt as to the material facts.'" *Id.* (citing *Street* quoting *Matsushita*, 475 U.S. at 586).

## V.      ARGUMENT

### A.      Chase is entitled to summary judgment because it complied with RESPA

Marais cannot prove that Chase violated RESPA, either by failing to respond to her QWR as required by 12 U.S.C. § 2605(e)(2) or by reporting her loan as past due to consumer reporting agencies in violation of 12 U.S.C. § 2605(e)(3). Complaint, ¶¶ 37-40. Rather, the undisputed facts show that Chase sent a RESPA-compliant response to Marais's QWR on February 28, 2011, which satisfied not just one, but two of Chase's three options for complying with the law. In addition, the undisputed facts show that Chase could not have violated RESPA's credit reporting provisions, since Marais admits that she voluntarily ceased paying on the loan as of December 2010, which was an overdue payment not protected by the credit reporting moratorium. Because Chase complied with RESPA, Chase is entitled to summary judgment.

#### 1.      Chase's QWR response was legally sufficient

The provisions of RESPA provide that when a servicer of a federally-related mortgage loan receives a QWR from a borrower, the servicer must respond within 20 business days acknowledging the QWR and within 60 business days must respond to the borrower's inquiry in one of three ways, summarized as follows: (A) make corrections to the borrower's account and

notify the borrower of the corrections, along with contact information for the servicer; (B) after conducting an investigation, send a letter explaining why the servicer believes the account is correct, along with contact information for the servicer; or (C) after an investigation, send a letter that includes information requested by the borrower or an explanation of why the information cannot be provided, along with contact information for the servicer.  12 U.S.C. § 2605(e)(2)(A)-(C).[2]

Federal courts interpreting RESPA's QWR provisions consistently have held that the obligation to respond to a borrower inquiry under RESPA arises only if the borrower's letter is, in fact, a QWR, which must meet the formal requirements of the statute (a letter on something other than a payment coupon that identifies the name and account of the borrower) and must also relate to the servicing of the borrower's loan.  *See*, 12 U.S.C. 2605(e)(1); *DeVary v. Countrywide Home Loans, Inc.*, 701 F.Supp. 2d 1096, 1106-1107 (D. Minn. 2010); *Lawther v. OneWest Bank, FSB*, No. C-10-00054 (JCS), 2012 U.S. Dist. LEXIS 12062, *49 (N.D. Cal. Feb. 1, 2012). "'[S]ervicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan…, and making the payments of principal and interest and such other payments with respect to the amounts received…." *Id*.; 12 U.S.C. § 2605(i)(3).  To the extent a borrower inquires about matters that do not relate to the servicing of her loan, the servicer has no obligation to respond under RESPA.  *DeVary* at 1107.

However, if the borrower's inquiry does relate to the servicing of her loan, then the servicer, after sending a timely acknowledgment letter, may choose to respond to the QWR in any one of the three ways provided in the statute in order to meet its obligation.  *See*, 12 U.S.C.

---

[2] RESPA has since been amended, including with respect to the timing of a servicer's response(s) and the amount(s) of damages available.  The law in effect at the time of the QWR and Chase's response, which is therefore applicable to the present dispute, is referenced throughout this Motion.

§ 2605(e)(2); *Merriweather v. CitiMortgage, Inc.*, No. 11-15515, 2012 U.S. Dist. LEXIS 137303, *8-9 (E.D. Mich. September 25, 2012) ("A servicer may choose a method of response; there is no duty to comply with all three"); *Weinert v. GMAC Mortgage Corp.,* No. 08-cv-14482, 2009 U.S. Dist. LEXIS 89881, *22-25 (E.D. Mich. September 29, 2009). Only the failure to perform any one of the three alternatives will give rise to a single violation of RESPA, and it is entirely within the discretion of the servicer as to which option for responding it chooses to exercise. *Eichholz v. Wells Fargo Bank, N.A.*, No. 10-cv-13622, 2011 U.S. Dist. LEXIS 128455, *8 (E.D. Mich. Nov. 7, 2011) (holding that a servicer has "three options when it receives a [QWR]," that an allegation that "all three provisions" were violated "only amount[s] to a single RESPA claim," and that the "three provisions…are alternatives that the mortgage servicer may choose between"). Whether or not a QWR response legally satisfies one of the statutory options will generally be apparent on the face the response letter itself. *Weinert* at *24-25; *Eichholz* at *13.

### a.      Chase satisfied the requirements of § 2605(e)(2)(C)

Chase most obviously complied with RESPA's third option for responding to a QWR, as set forth at § 2605(e)(2)(C), which requires only that, after an investigation, the servicer respond with a "written explanation or clarification that includes--(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower." As evidenced by the face of the letter, Chase's February 28, 2011 response clearly satisfied the requirements of this provision.

First, it is beyond dispute that, after its investigation, Chase provided Marais with a written response that included information that she had requested. Specifically, Chase's

response included copies of the Note, Mortgage, Loan Transaction History, Escrow Disclosure Statements, an Appraisal, and a Payoff Quote, which together provided Marais with nearly all of the information she had asked for in her QWR, including much of the information unrelated to the servicing of her loan, which was not a proper subject of her QWR in the first place.  *See*, Watkins Aff., ¶ 4  (*e.g.*, the Note shows that the loan is a fixed, 6.000% interest rate loan, thereby providing Marais with information requested in #'s 1 and 2 of her QWR; the Loan Transaction History provided the information requested in #'s 8, 9, 11, and 15, *etc*.).  *See also*, *Van Egmond v. Wells Fargo Home Mortgage*, No. SACV 12-0112 (MLGx), 2012 U.S. Dist. LEXIS 42061, *14 (C.D. Cal. Mar. 21, 2012) (finding the provision of documents containing information requested by the borrower to be adequate).

Second, the response letter further explained that, to the extent any information requested was not provided, such information "is unavailable or considered proprietary…," thereby satisfying the statutory obligation to provide "an explanation of why the information requested is unavailable or cannot be obtained…."   12 U.S.C. § 2605(e)(2)(C); *Van Egmond* at *15 (recognizing the sufficiency of a similar "disclaimer").  Notably, RESPA does not obligate a servicer to provide every piece of information requested by a borrower, nor does it require an explanation of why information is unavailable except when the servicer does not provide the information requested.  *See*, 12 U.S.C. § 2605(e)(2)(C) (framing the duties using the disjunctive "or," which is logically consistent with the substance of the obligation to provide *either* at least some of the requested information *or* to give an explanation if none of the requested information is provided).  *See also*, *DeVary*, 701 F.Supp. 2d 1096, 1108.  Nonetheless, Chase both provided the vast majority of the information requested *and* gave an explanation as to why it had not provided the remainder, thereby fulfilling its statutory duty.

Finally, the response included both in the body of the letter and beneath the closing salutation the name and telephone number (including an additional number for text telephone) of Chase's Customer Care/Customer Service Department for Chase Home Lending, thereby satisfying part (ii) of § 2605(e)(2)(C). *See*, Watkins Aff., ¶ 4.  RESPA requires nothing more.

Because the undisputed facts show that the February 28, 2011 response satisfied the requirements of § 2605(e)(2)(C), the Court can come to but one conclusion, and that conclusion is that Chase complied with RESPA and is, therefore, entitled to summary judgment.

### b.      Chase satisfied the requirements of § 2605(e)(2)(B)

While Chase's compliance with § 2605(e)(2)(C) is legally sufficient to entitle it to summary judgment, even if it were not, Chase also complied with RESPA's second option for responding to a QWR, as set forth at § 2605(e)(2)(B).  The second option requires that, after an investigation, the servicer respond with a "written explanation or clarification that includes--(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower."  As evidenced by the face of the letter, Chase's February 28, 2011 response satisfied the requirements of this provision as well.

Marais included in her QWR the following statement of the "reasons for [her] belief…that [her] account [was] in error…": "I believe that my account is in error for the following reasons: payments made during the year 2008 and 2009 [*sic*] were misapplied to the account or declared late when, in fact, they were timely.  Late fees were charged despite a

written repayment agreement from Chase to the contrary."[3]  Complaint, Exhibit C.  Chase's obligation, if it chose to respond in accordance with the second option under RESPA, was to provide "to the extent applicable" a written explanation of its own belief as to why Marais' account was correct.  12 U.S.C. § 2605(e)(2)(B).

Because Marais' "statement of reasons" failed to identify any specific payments, dates, or fees or charges that she believed were in error, Chase could only respond with a similarly general statement of its own reasons for believing the account was correct.  Chase did so by providing Marais with, among other things, a complete Loan Transaction History, which included a comprehensive accounting of all activity on her loan, including all pertinent dates (transaction date, effective date, due date), the transaction descriptions and amounts, how the amounts were applied, and the balances of all accounts related to the loan (*e.g.*, suspense, principal, escrow). *See*, Watkins Aff., ¶ 4.  This Loan Transaction History satisfies the requirement to provide a written explanation as to why Chase believed Marais' account was correct, because (1) it contains all of the information needed to ascertain why Chase believed her account was not in error and (2) Marais' own statement was so general that it could not have obligated Chase to provide a more specific explanation, *i.e.*, Chase had only to give reasons "to the extent applicable." *Id.*

In addition, as noted above, Chase's response included both in the body of the letter and beneath the closing salutation the name and telephone number (including an additional number for text telephone) of Chase's Customer Care/Customer Service Department for Chase Home

---

[3] Marais also indicated in her QWR that her payment amount kept fluctuating over the years "without explanation," but did not indicate that she believed the account was "in error" in this respect or give a reason for any such belief.  *See*, QWR, p. 2.

Lending, thereby satisfying part (ii) of § 2605(e)(2)(B).  *Id*.  Again, this is all that RESPA requires.

Because the undisputed facts show that the February 28, 2011 response letter also satisfied the requirements of § 2605(e)(2)(B), the Court can come to but one conclusion, and that conclusion is that Chase complied with RESPA and is, therefore, entitled to summary judgment.

**2.    Chase did not violate the credit reporting provisions of § 2605(e)(3)**

RESPA also provides that, when a servicer receives a QWR "*relating to a dispute regarding the borrower's payments*," the servicer may not, during the 60-day QWR response period, provide information to any consumer reporting agency ("CRA") "regarding any overdue payment, owed by such borrower *and relating to such period or qualified written request*...."  12 U.S.C. § 2605(e)(3) (emphasis added).  Marais alleges that Chase violated § 2605(e)(3), and therefore she must prove that (1) her QWR related to a dispute concerning her payments; (2) Chase provided information to a CRA regarding an overdue payment during the 60-day response period; and (3) the overdue payment that Chase allegedly reported related either to her QWR or to the 60-day response period itself.  *See, e.g.*, *DeVary*, 701 F.Supp. 2d 1096 at 1109 (noting that a QWR must relate to a dispute regarding payments in order invoke the obligations of § 2605(e)(3)). The undisputed facts show that Marais cannot prove that Chase violated § 2605(e)(3).

First, Marais' QWR was not sufficiently specific to constitute a "dispute regarding [her] payments."  As noted above, to the extent the QWR even raises an issue with Marais' payments, it makes only a general reference, stating "I believe that my account is in error for the following reasons: payments made during the year 2008 and 2009 [*sic*] were misapplied to the account or declared late when, in fact, they were timely."  Complaint, Exhibit C.  She does not identify a single specific payment that is a subject of her "dispute."  But generally disputing the accounting

of one's loan is not sufficient to obligate a servicer under § 2605(e)(3).  *See, e.g.*, *Knight-Bonner v. BAC*, Civil Action No. 11-13436, 2012 U.S. Dist. LEXIS 183878, *11 (E.D. Mich. October 19, 2012) (holding that a general dispute as to the validity of debt and accuracy of a loan account did not invoke the protections of § 2605(e)(3)).  Borrowers may not expand the scope of RESPA's credit reporting moratorium to cover every payment (or non-payment) on their loan merely by raising a general dispute with respect to the entirety of their payment history in a QWR.

Second, even if Marais' QWR were sufficient to invoke the credit protections of RESPA § 2605(e)(3), which it is not, Marais' own written discovery responses demonstrate that she cannot prove that Chase ever improperly reported her loan to a consumer reporting agency, (a "CRA"), as she failed to identify a single report made by Chase to a CRA that she asserts was improper.  *See*, Rog Responses #'s 14-15.  Marais has never supplemented her responses.

Third, Marais could never prove that Chase provided information to a single CRA regarding an overdue payment relating either to (1) the 60-day response period (which started on January 3, 2011); or (2) her QWR (where her "payment dispute" is described generally as covering the years 2008 and 2009).  This is because, even if Marais could prove that Chase reported her loan as delinquent during the 60-day response period, she admits that the delinquency at that time was the result of her failure to make the *December 2010* payment.  Rog Response #7; RFA Response #8.  The only "overdue payment" that Chase could have reported relates neither to the QWR itself (which cites payments in 2008 and 2009) nor to the 60-day response period (the sixty days *after* January 3, 2011).  *See, e.g.*, *Guidi v. Paul Financial, LLC*, No. 13-CV-01919-LHK, 2014 U.S. Dist. LEXIS 2249, *22 (N.D. Cal. Jan. 7, 2014) (holding that prior credit reporting of a default that precedes a QWR will not support a claim under

§ 2605(e)(3)).  As a result, any report of delinquency by Chase, even if Marais could prove it was made during the relevant timeframe, could not have violated § 2605(e)(3)'s prohibition.  *See also*, *Roth v. CitiMortgage, Inc.*, No. 12-CV-2446 (SJF) (WJW), 2013 U.S. Dist. LEXIS 131861, *26 (E.D. N.Y. Sept. 11, 2013) (holding that a servicer has no affirmative obligation under RESPA to remove already reported delinquencies upon receipt of a QWR).

Because the undisputed facts show that Chase did not violate the credit reporting provisions of § 2605(e)(3), the Court can come to but one conclusion, and that conclusion is that Chase complied with RESPA and is, therefore, entitled to summary judgment.

**B.**    **Chase is entitled to summary judgment because Marais cannot show that she suffered any actual damages as the result of a violation of RESPA**

Even if Marais could establish that Chase violated RESPA, which she cannot, because she has suffered no actual damages resulting from the alleged violation(s), Chase still is entitled to summary judgment.  RESPA establishes civil liability for a violation of its QWR provisions in § 2605(f), which provides that "[w]hoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts: (1) Individuals.  In the case of any action by an individual, an amount equal to the sum of--(A) any actual damages to the borrower as a result of the failure" and additional statutory damages up to $1,000 in cases of a pattern or practice of noncompliance.  12 U.S.C. § 2605(f)(1).  As the statutory language makes clear, a borrower must show "actual damages" that are the "result of the failure" of a servicer to comply with the statute in order to prevail.  § 2605(f)(1)(A).

Despite Marais' concession at oral argument on appeal that "there's never going to be actual damages from somebody receiving a deficient letter…," the Sixth Circuit sustained her claim on the grounds that its prior decisions "counsel[ ] against dismissal of RESPA claims on the basis of inartfully-pleaded actual damages."  *Marais v. Chase Home Finance LLC*, 736 F.3d

711, 721-722 (6th Cir. 2013); June 19, 2013 Oral Argument at 11:34-11:39.  Nonetheless, the Sixth Circuit also recognizes, including in its decision on appeal of this Court's prior Judgment, that a borrower who brings an action under 12 U.S.C. § 2605(e) and (f) must show actual damages specifically caused by the alleged violation in order to ultimately prevail.  *Marais* at 720-722 (holding that Marais adequately alleged actual damages in order to state a RESPA claim and distinguishing her claim from one that fails to allege "*any* pecuniary damages" (emphasis *sic*) and distinguishing its decision on the pleadings from one on summary judgment, where proof of such damages is required); *Houston v. U.S. Bank Home Mortgage Wisconsin Servicing*, No. 11-2444, 2012 U.S. App. LEXIS 24196, *7-14 (6th Cir. November 20, 2012) (affirming in part and reversing in part a grant of summary judgment based on the borrower's failure to prove actual damages resulting from a RESPA QWR violation).  In *Houston*, the Sixth Circuit put the operative question thus: "what damages, if any, can fairly be traced" to the alleged violation.  *Id.* at *13.

In accord with the law of the Sixth Circuit, this Court has consistently held that no § 2605(f) RESPA claim is sustainable in the absence of actual damages caused by the violation. *See, e.g.*, *Mattison v. PNC Bank, N.A.*, No. 3:13-cv-061, 2013 U.S. Dist. LEXIS 106721, *23 (S.D. Ohio July 30, 2013) ("Courts have determined that actual damages *must* be pled as part of *any* RESPA claim and any alleged loss must be related to the alleged RESPA violation itself" (emphasis added)); *Ogle v. BAC Home Loan Servicing LP*, 924 F.Supp. 2d 902, 911 (S.D. Ohio 2013) (a borrower "who cannot show actual damages as required by § 2605(f), fails to state a claim under RESPA *as a matter of law*" (emphasis added)); *Tsakanikas v. JPMorgan Chase Bank, N.A.*, No. 2:12-CV-888, 2012 U.S. Dist. LEXIS 172058, *7 (S.D. Ohio Dec. 4, 2012) ("Recovery under RESPA requires more than establishing a violation; a plaintiff must suffer

actual, demonstrable damages, and the damages must occur 'as a result of' that specific violation").[4]

Marais cannot prove that she suffered actual damages for two reasons: First, Marais' failure to satisfy her Fed.R.Civ.P. 26(a)(1)(A)(iii) initial disclosure obligations with respect to her alleged damages precludes her from presenting any evidence of damages whatsoever to support her claim.  Second, even if she were permitted to present evidence and even if Chase had violated RESPA, Marais cannot prove that she suffered any actual injury as a result of the violation she alleges.

### 1.    Marais' inadequate Rule 26(a)(1)(A)(iii) disclosure precludes her from submitting any evidence of damages

Marais' failure to disclose "a computation of each category of damages claimed" in her Rule 26(a)(1) initial disclosures absolutely bars her from presenting any evidence of damages to support her claim.  *See*, Fed.R.Civ.P. 37(c); *Bessemer & Lake Erie Railroad Co. v. The Pittsburgh and Conneaut Dock Co.*, 596 F.3d 357, 366-370 (6th Cir. 2010) (holding that disclosure requires more than mere "notice" and that a failure to provide a complete computation of each category of damages mandates exclusion of evidence of such damages under Rule 37(c) absent justification or harmlessness).  Indeed, "Federal Rule of Civil Procedure 37(c)(1) requires absolute compliance with Rule 26(a)…."  *Big Lots Stores, Inc. v. Luv N' Care, Ltd.*, No. 07-4296, 2008 U.S. App. LEXIS 24607, **17-19 (6th Cir. Dec. 4, 2008).  *See also*, *Webb*, 2008 U.S. Dist. LEXIS 42559 at *39-40 ("Rule 37 requires virtually automatic preclusion of information not disclosed pursuant to Rule 26(a)(1)").

---

[4] *See also*, *BAC Home Loans Servicing LP v. Fall Oaks Farm LLC*, 848 F.Supp. 2d 818, 830 (S.D. Ohio 2012); *Hines v. Franklin S&L*, No. 1:09-cv-914, 2011 U.S. Dist. LEXIS 24500, *16 (S.D. Ohio Jan. 31, 2011); *Webb v. Chase Manhattan Mortgage Corp.*, No. 2:05-cv-0548, 2008 U.S. Dist. LEXIS 42559, *39-40 (S.D. Ohio May 28, 2008).

As this Court has held, there is no justification for failing to comply with Rule 26(a)(1)(A)(iii) when the information on which a claimant relies for a claim of damages "should have been in his possession or reasonably accessible to him at all times during the litigation." *Mohanna v. Jake Sweeney Automotive, Inc.*, No. 1:10-cv-00776, 2012 U.S. Dist. LEXIS 97413, *21 (S.D. Ohio July 13, 2012).  Moreover, this Court has also held that a court may bar the submission of damages evidence in response to a motion for summary judgment (without the need for a separate motion) and may grant judgment to a defendant on that basis alone, where, as here, a Rule 37(c) sanction for failing to make adequate initial disclosures under Rule 26(a)(1)(A)(iii) is appropriate.  *Alloys International, Inc. v. Aeronca, Inc.*, No. 1:10-cv-293, 2011 U.S. Dist. LEXIS 119687, *16-18 (S.D. Ohio Oct. 17, 2011); *Mohanna* at *21.

The entirety of Marais' initial disclosure with respect to damages claimed under RESPA states as follows: "Count Two: $1,000 plus attorney fees and costs."  The disclosure neither identifies the category(ies) of damages being claimed, nor provides a computation that reveals in any way how Marais arrived at the $1,000 damages figure.[5]  And none of the documents produced supply the required information, even if Marais had been permitted to satisfy her 26(a)(1)(A)(iii) obligations by merely submitting supporting documentation (which she was not). Marais never supplemented her Initial Disclosures.

Moreover, in response to written discovery Marais once again failed to provide the required information about her claimed damages.  *See*, *Mohanna* at 16-21.  Instead, she provided evasive responses, including that "damages are not subject to reasonable calculation at this early stage of discovery," despite the fact that Rule 26(a) is specifically designed for disclosure of damages calculations before *any* discovery is conducted, and despite the fact that she did not

---

[5] The signing of her disclosure constituted a certification that "it is complete and correct as of the time it is made."  Fed.R.Civ.P. 26(g)(1)(A).

identify in the parties' 26(f) report any category of discovery that she intended to seek from Chase relating in any way to her alleged damages. *See*, Rog Responses, #'s 8, 16; Rule 26(f) Report of Parties, § 6 (Doc. #9); *City of Rome v. Hotels.com, L.P.*, No. 12-14588, 2013 U.S. App. LEXIS 24745, *24-25 (11th Cir. Dec. 13, 2013) (holding that a lack of information needed to perform "final" damages computation does not justify lack of computational disclosure, and that failure to conduct discovery on damages shows non-disclosure was unjustified).

Marais also responded to written discovery seeking factual information and evidentiary support for her damages claim by simply and repeatedly referring Chase to the allegations in her Complaint and even referenced "psychological and emotional damage," (without providing any calculations), neither of which were pled and which this Court eventually denied her leave to add in an amended complaint. Rog Responses #8, 16; Order Denying Motion for Leave to File Amended Complaint (Doc. #32). She also, incomprehensibly, stated that such damages "are ultimately subject to settlement negotiations and/or jury verdict," rather than providing any of the information requested. *Id*. While she concluded by reserving the right to supplement her response(s), no supplemental responses were ever received.

Marais' failure to provide an adequate Rule 26(a) disclosure of her damages (and her subsequent failure to provide the information in discovery) cannot be excused under Rule 37(c), because it was neither substantially justified nor harmless. The failure was not substantially justified because, like the plaintiff in *Mohanna*, Marais was or should have been in possession of everything she needed to make a proper disclosure, and she can identify no "specific challenges [she] faced in obtaining the necessary information or making the computation." *Mohanna*, 2012 U.S. Dist. LEXIS 97413 at *21. *See also*, Order Denying Motion for Leave to File Amended

Complaint,  (Doc. #32) (holding that Marais failed to show good cause for her tardy request for leave to amend to add, among other things, new damages allegations).

Moreover, Marais not only failed to provide a calculation of her alleged damages, but she did not even identify the *categories* of damages that she was seeking, as required by Rule 26(a)(1)(A)(iii).  And she failed to supplement her disclosures even when Chase pointed out how inadequate and incomplete her disclosures were in its opposition to her request for leave to amend her complaint.  *See*, Defendant's Memorandum in Opposition to Plaintiff's Motion for Leave to File Amended Complaint, pp. 10-11 (Doc. #30).  *See also*, City of Rome, 2013 U.S. App. LEXIS 24745 at *24-25 (failure to supplement supports finding of unjustified non-compliance).  To date, Chase still is not aware of the precise basis for Marais' claimed damages, whether the $1,000 is intended to be statutory damages, actual damages, or some combination of the two, or any notion of how Marais purports to have arrived at that dollar figure.

Which is precisely why Marais cannot be excused under Rule 37(c)'s second caveat either: Marais' 26(a)(1)(A)(iii) failure was not harmless.  In fact, it was highly prejudicial.  By virtue of her non-disclosure, Marais made herself a moving target with respect to her "claimed" damages, both in this Court and on appeal, solely for the purpose of surviving a dismissal on the pleadings.  Specifically, her refusal to provide the categories and computation(s) of alleged damages allowed Marais to represent at oral argument on appeal that her Complaint alleged (or should be construed to allege) that she had actually paid additional interest on her loan as a result of Chase's February 28, 2011 response, even though she had already acknowledged in written discovery that she stopped making any payments on the loan after the November 2010 payment, at least three months *prior* to Chase's response.  Rog Response #7; RFA Response #8.  The Court of Appeals based its reversal of this Court's decision on that very representation, believing

that Marais was alleging that she had been paying extra interest on her loan to stay current even after Chase responded to her QWR.[6]  *See*, *Marais* at 721 (holding that "Marais's complaint sufficiently stated that interest damages flowed from Chase's deficient response to her QWR because *any additional interest she paid on the principal balance after Chase deficiently responded to her QWR on February 28, 2011*, would flow from the deficient response" (emphasis added)).

Had Marais been forthcoming in her 26(a)(1)(A)(iii) disclosures, which were sworn to be "complete and correct" at the time she made them, she either would have had to spell out exactly what extra interest she claims she actually paid after Chase's QWR response was received (which she knew to be none, having made no subsequent payments), thereby subjecting her damages "theory" to appropriate scrutiny and refutation, or to acknowledge that her "additional interest" theory was either not what was alleged or could not be supported by the facts, thereby obligating herself to provide some other explanation of her alleged actual damages—both to this Court and the Court of Appeals—as a reason why her Complaint should survive dismissal. Instead, Marais—intentionally or not—led the Sixth Circuit to believe that she was alleging that she had to and did pay additional interest after Chase responded to her QWR in order to remain current, despite the fact that she had acknowledged in discovery that she had not paid anything

---

[6] Counsel for Marais represented the following to the United States Court of Appeals for the Sixth Circuit at oral argument on June 19, 2013: "Counsel for Marais: The damages are my client paid $800 that weren't credited to her account." Recording at 7:59-8:05; "Judge White: Did you pay additional interest because…? Counsel: We certainly alleged it. Yeah." *Id*. at 8:36-8:42;  "Judge Griffin: Did you pay the interest?  I mean you have alleged it. * * * Counsel: We couldn't figure out, we have yet to find out from Chase exactly how much extra interest was alleged [*sic*].    Judge Griffin: But there was some.  Counsel: That's our allegation. That's our position. Judge Griffin: I mean, logically, there would be [additional interest], right? Counsel: Exactly, correct." *Id*. at 8:47-9:25.  "Judge White: "So you're saying she would have gotten her money back by now?"  Counsel: "She should have, absolutely."  Judge White: "And she wouldn't have had to continue to pay more interest to remain current."  Counsel: "She would have gotten the $800 credited that she overpaid."  *Id*. at 11:47-11:58.

on the loan since three months prior to Chase's QWR response. A proper Rule 26(a)(1)(A)(iii) disclosure would have prevented what, at best, can be described as a critical and likely case-dispositive misunderstanding and saved the courts and the parties substantial time and resources.

Indeed, the cost to Chase alone of litigating the issue of Marais' allegations of actual damages on its original motion, on appeal, and even now on summary judgment, has been significant. It is why Chase is forced to refute every possible theory of damages in this Motion, rather than only the specific—and yet unknown—theory on which Marais may be proceeding. Even more, Chase will once again be prejudiced, regardless of how Marais responds to the present Motion, since she presumably will either argue that she suffered actual damages that have never been disclosed in her Rule 26(a)(1)(A)(iii) disclosures, or she will have to acknowledge, contrary to what she alleged and represented to the Sixth Circuit, that she suffered no actual damages, and instead argue for the first time that a § 2605 RESPA claim does not contain an actual damages requirement—a legal position she did not advance before this Court in opposition to Chase's Motion for Judgment on the Pleadings.[7] Either way, Marais' evasiveness in discovery and her violation of the Rule 26(a) disclosure obligations have been and continue to be prejudicial to Chase.

It is difficult to imagine a circumstance in which application of Rule 37(c)'s mandatory exclusion of evidence could be more appropriate. In the absence of any damages evidence from Marais, the undisputed facts can only show that she suffered no actual damages, which the law dictates are a required element of any § 2605 RESPA claim. As a result, the Court can come to but one conclusion, and that conclusion is that Chase is entitled to summary judgment.

---

[7] While Marais raised a version of this argument on appeal, (which the Sixth Circuit's decision implicitly rejects), she never presented it to this Court in her opposition to the Motion for Judgment on the Pleadings and still has never supplemented her Rule 26(a) disclosures to state explicitly what her position on damages actually is.

2.      **Marais suffered no damages as a result of Chase's alleged violation(s) of RESPA**

    a.      **Marais suffered no additional interest damages relating to her allegedly misapplied payments as a result of Chase's alleged violation**

        i.      **Marais suffered no additional interest damages**

Even if Marais were permitted to present evidence of her alleged damages, and even assuming for the sake of argument that she is correct that payments in 2008 and 2009 were misapplied to late charges improperly assessed during a forebearance agreement,[8] she still could not prove that she suffered any actual damages as a result of Chase's alleged violation of RESPA.  According to Marais, and as held by the Sixth Circuit, Marais adequately alleged that she had paid "additional interest…on the principal balance after Chase deficiently responded to her QWR on February 28, 2011."  *Marais* at 721.  She cannot prove that she suffered any such "additional interest damages" for at least two reasons.

First, Marais admits that she did not make a payment to Chase after she voluntarily ceased payment on the loan in or about November 2010, at least three months prior to Chase's QWR response.  Rog Response, #7; RFA Response #8.  That is, it is undisputed that she did not remit a single payment on the loan at any time after Chase's QWR response.  As a result, she

---

[8] Chase does not address in detail, for purposes of this Motion, whether Marais' payments were, in fact, misapplied, since the answer to that question is immaterial to why Marais cannot prevail on her RESPA claim.  *Vassalotti v. Wells Fargo Bank, N.A.*, 732 F. Supp. 2d 503, 509 (E.D. Pa. 2010) ("Under RESPA, it is irrelevant whether the servicer's understanding of the [disputed aspect of the account] is correct," since "a reasonable explanation of the servicer's belief is sufficient [to comply with the statute], even if it is later determined that the belief is erroneous"); *Ford v. New Century Mortgage Corporation*, 797 F.Supp. 2d 862, 870 (N.D. Ohio 2011) ("Section 2605 [of RESPA] does not regulate the posting or application of payments").  It is sufficient to note, however, that on its face, the very forebearance agreement upon which she ostensibly bases her assertion could not have been clearer that Marais' dispute with the application of her payments was meritless, as it provided that during the forebearance period, "[l]ate charges will be assessed as provided in the Note and Mortgage," and that "[a]fter fulfilling the terms of this agreement, there may still be an outstanding late charge/fee balance remaining on the account."  Summerford Depo, Exhibit E, pp. 2-3.

could not have paid additional interest on the loan *as a result of* Chase's allegedly deficient QWR response.  *See, e.g.*, *McDonald v. OneWest Bank, FSB*, 929 F.Supp. 2d 1079, 1096 (W.D. Wash. 2013) (observing that fees and charges incurred due to a loan default that occurred prior to a QWR could not be actual damages as a result of the servicer's response).  Indeed, it is elementary that interest or charges on a loan that are not actually paid, even if improperly assessed, cannot be "actual damages" suffered by the borrower.  *See, e.g.*, *Newton v. Bank of McKenney*, No. 3:11cv493-JAG, 2012 U.S. Dist. LEXIS 68731, *25 (E.D. Va. May 16, 2012) (because the plaintiffs "*never paid* any overcharges, and the Bank eventually reimbursed the higher interest charges,…the plaintiffs have suffered no damage as a result of the excess interest" (emphasis added)); *First Comics, Inc. v. World Color Press, Inc.*, 884 F.2d 1033, 1042 (7th Cir. 1989) ("The damage award should have been reduced further by the amount of outstanding charges which plaintiff *never paid*" (emphasis added)).

Second, and perhaps more importantly, even if Marais were right about the alleged misapplication of excess payments, and even if she had, in fact, remitted payment to Chase after the QWR response on February 28, 2011, she still could not prove that she paid "additional interest," because prepayment of principal on the loan would not have altered her total monthly payment amount in the first place.  *See*, Watkins Aff., ¶¶ 5-6, Mortgage, ¶ 2; Note, ¶ 4 ("If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes").[9]  At most, it would have moved her expected payoff date forward by a month, if that, or reduced the amount

---

[9] This further illustrates why the exchange between Judge White and Marais' counsel at oral argument concerning the RESPA damages theory clearly entailed at least a misunderstanding, *i.e.*, that if Chase had applied Marais' payments "correctly," then "she wouldn't have had to continue to pay more interest to remain current."  The loan documents directly refute that suggestion, even if Marais had made payments to remain current beyond the QWR response.

of the final payment in her amortization schedule, neither of which would have been realized any time prior to late 2036, when the loan would be approaching maturity.  *Id.*, Note, ¶ 3.  As a result, under no circumstance could Marais actually have paid more interest than she would have paid had the alleged excess amounts been applied to the principal balance of her loan as she claims they should have been.  The undisputed facts show that Marais could not have suffered additional interest damages, despite her persuading the Court of Appeals that she had alleged such damages.

> **ii.**    **Even if Marais had paid additional interest, it could not have been the result of Chase's alleged violation**

Even if the undisputed facts were not so clearly dispositive of Marais' claim that she suffered "additional interest damages," the law precludes her from proving that she suffered the alleged injury "as a result of" Chase's alleged violation, because she cannot show that Chase's purported failure to comply with one of the three QWR response options was a necessary condition, *i.e.*, a "but for" cause, of her alleged additional interest damages.

As noted above, servicers who fail to comply with any provision of § 2605 are liable in the amount of "any actual damages to the borrower *as a result of* the failure [to comply]…."  12 U.S.C. § 2605(f)(1)(A) (emphasis added).  The phrase "as the result of" or "resulting from" has consistently been construed by federal courts as requiring "but for" causation, including in federal statutes.  *See, e.g.*, *Pentax Corp. v. Robison*, 135 F.3d 760, 761 (Fed. Cir. 1998) (construing 19 U.S.C. § 1592(d)); *United States v. Golden Ship Trading Co.*, 25 C.I.T. 40, 42 (U.S. C.I.T. 2001) (same, citing *Pentax*); *United States v. Rosa-Ortiz*, 348 F.3d 33, 38 (1st Cir. 2003) (construing 18 U.S.C. § 751(a)'s "by virtue of" language as a "but-for causation test" in the same meaning of "as a result of"); *Tritt v. Automatic Data Processing, Inc.*, No. 3:06-CV-

2065, 2012 U.S. Dist. LEXIS 113590, *33 (D. Conn. Aug. 11, 2012) (construing insurance plan language "caused by or resulting from" as requiring but-for causation).

Critically, only by "showing that 'but for' the defendant's actions, the plaintiff's injury would not have occurred," will the obligation to prove the "cause in fact" element of causation be satisfied.  *See*, *Rupert v. Daggett*, 695 F.3d 417, 425 (6th Cir. 2012).  In logical terms, "but for" causation has been described by courts as a "necessary condition" for the existence of the plaintiff's injuries, *i.e.*, "the plaintiff would not have been harmed had his rights not been violated by the defendant."  *See, e.g.*, *Greene v. Doruff*, 660 F.3d 975, 979 (7th Cir. 2011).

In order for Marais' to show that her so-called "additional interest damages" were incurred "as result of" Chase's alleged violation, she must prove that she would not have been harmed had Chase complied with RESPA.  But that assertion is demonstrably false.  Even assuming that Marais suffered damages relating to the misapplication of her payments, Chase's *failure to comply with RESPA* cannot be said to have caused her damages, because Chase could have, and did, comply with RESPA without "correcting" her account.   *See*, 12 U.S.C. § 2605(e)(2)(A)-(C).  Rather, Chase was free to choose any one of three options for responding to her QWR, two of which do not require making any changes to Marais' account whatsoever. *See, e.g.*, 12 U.S.C. § 2605(e)(2); *Baehl v. Bank of America, N.A.*, No. 3:12-cv-00029-RLY-WGH, 2013 U.S. Dist. LEXIS 46445, *16 (S.D. Ind. Mar. 25, 2013); *Merriweather* at *8-9; *Weinert* at *22-25; *Eichholz* at *8; *Van Egmond* at *12.  *See also*, *Ford*, 797 F.Supp. 2d 862 at 870 ("Section 2605 [of RESPA] does not regulate the posting or application of payments").  That is, the QWR response duties of RESPA are stated in the disjunctive, such that no servicer has an absolute obligation to make changes to a borrower account. *Eichholz* at *8.

Thus, logic dictates that Chase's alleged failure to comply with RESPA is not a necessary condition for Marais' so-called injuries, (even if she had actually paid additional interest after the QWR response), and therefore the alleged failure to comply is not a "but for" cause of them, as RESPA requires.   Had Chase complied with RESPA by responding in accordance with § 2605(e)(2)(C) (which Chase, in fact, did) or § 2605(e)(2)(B) (which Chase, in fact, also did), Marais still would have incurred the alleged additional interest damages (if such damages actually existed) that she claims flow from Chase's purported failure to "correct" her account. *See, e.g.*, *Devonshire v. Johnston Group First Advisors*, 338 F.Supp. 2d 823, 826, fn. 1 (N.D. Ohio 2006) (observing the summary judgment burden of a plaintiff to prove a "causal nexus" between the defendant's conduct and her injuries).

Simply put, it is unequivocally *not* true, as a matter of undisputed fact and law, that under her own theory of damages, Marais "would not have been harmed had [her] rights not been violated by the defendant." *Greene*, 660 F.3d at 979.  For this additional reason, the purported additional interest damages cannot sustain her claim on summary judgment, even if she could prove she paid such amounts after Chase's QWR response.

### b.      Marais' expenses in sending the QWR cannot be actual damages

Because of her inadequate Rule 26(a)(1)(A)(iii) disclosures, it is unclear whether Marais is actually claiming that she incurred costs in sending her QWR that she believes constitute damages resulting from Chase's alleged violation.  Nonetheless, the Sixth Circuit instructed this Court to consider on remand Marais' argument that "her QWR expenses became actual damages when Chase [allegedly] ignored its statutory duties to adequately respond."  *Marais* at 721. Marais' cannot satisfy her burden to prove actual damages by pointing to her QWR expenses for two reasons: First, there is no evidence that Marais incurred any costs or expenses in sending the

QWR in the first place; and second, even if there were such evidence, construing those costs as actual damages would be inconsistent with basic notions of causation and would render the actual damages requirement in RESPA meaningless.

As an initial matter, Marais has produced no evidence, either in her initial disclosures or her written discovery responses to support the assertion that she incurred costs or expenses in sending her QWR. *See*, Rog Response, #16; Initial Disclosures. Even if it can be assumed that the sending of any letter would cost a nominal sum, it is Marais' burden to prove both the amount of the costs or expenses that she claims, and that those costs or expenses were incurred by her. *Devonshire*, 338 F.Supp. 2d 823, 826, fn. 1; *Eichholz* at *19; *Pickens v. Liberty Mutual Ins. Co.*, No. 2:12-cv-1652-SLB, 2013 U.S. Dist. LEXIS 115377, *26 (N.D. Ala. Aug. 15, 2013) (after movant on summary judgment pointed to evidence of lack of damages, non-movant had burden to point to specific evidence showing damages). She has not presented any evidence to support that assertion, is precluded from presenting any evidence she did not provide in response to discovery, and therefore cannot carry her burden to at least demonstrate that an issue of fact exists. For this reason alone, the Court should conclude that Marais' alleged "QWR expenses," to the extent she claims them as damages, cannot support her claim.

Nonetheless, even if Marais had properly produced evidence of the costs she incurred in preparing and mailing a QWR, such evidence would not support a claim for damages, because the purported damages—costs incurred *prior* to the QWR itself—could not have been suffered "as a result of [Chase's] failure" to properly respond to that same QWR. 12 U.S.C. § 2605(f)(1)(A). It is an elementary rule of causation that, "a prior event cannot be caused by a later event." *Stewart v. Independent Sch. Dist. No. 196*, 481 F.3d 1034, 1044 (8th Cir. 2007). *See also*, *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 474 (2d Cir. 1995) (holding that

pre-litigation attorney fees relating to the preparation of correspondence to credit agencies cannot be "actual damages" under the Fair Credit Reporting Act [15 U.S.C. §§ 1681 et seq.], (the "FCRA"), when there was no prior violation of the statute that such correspondence was intended to remedy).  While *post hoc ergo propter hoc* is a logical fallacy, it is at least true that all causes do, in fact, precede their effects.  *Ante hoc ergo propter hoc*, the position Marais apparently advances here, is a logical and metaphysical incoherence.

Moreover, suggesting that Marais' costs were transformed into damages when Chase allegedly failed to comply with the law does not resurrect the theory, as it assumes that a QWR is analogous to prepayment for goods that never were delivered.  But such an analogy is inapposite, as Marais' did not incur costs *in exchange for* Chase's performance of its alleged statutory duties.  She paid Chase nothing for its QWR response.  *Cf. Watt v. GMAC Mortg. Corp.*, 457 F.3d 781, 783 (8th Cir. 2006) (observing that a servicer *may* charge a borrower a fee for a QWR response).  While the QWR itself triggers the statutory duty to respond, it is not Chase's response that dictates whether she received the benefit of her bargain with respect to the costs or expenses of the QWR—even if she proved that she had paid for paper, postage, and/or attorney services in the preparation and mailing of the QWR, she presumably received precisely what she paid for in full measure.  Chase's response—compliant or not—does not change that.

Moreover, the cases previously cited by Marais to support her position actually contradict it.  For example, the reference in *Rawlings v. Dovenmuehle Mortgage, Inc.*, 64 F. Supp. 2d 1156, 1159-60, 1163 (M.D. Ala. 1999), to damages associated with "expenses for preparing, photocopying and obtaining certified copies of correspondence" relates entirely to post-QWR follow-up correspondence with the servicer that the borrowers alleged they had to engage in *as a result of* the servicer's initial failure to properly respond to a QWR.  Accord, *Tsakanikas*, 2012

U.S. Dist. LEXIS 172058 at *8-11 (rejecting an identical argument and noting a similar inapplicability with respect to *Johnstone v. Bank of America*, 173 F.Supp. 2d 809 (N.D. Ill 2001) and *Cortez v. Keystone Bank, Inc*., No. 98-2457, 2000 U.S. Dist. LEXIS 5705, (E.D. Pa. May 2, 2000), both of which were cases that relied upon *Rawlings*).

Indeed, every court of which Chase is aware—including this Court in *Tsakanikas*—that has reviewed whether the costs of an initial QWR may constitute actual damages resulting from the subsequent response to that same QWR has rejected the argument. *See, e.g.*, *Dunkle v. The Bank of New York Mellon*, No. 3:11-cv-1242, 2013 U.S. Dist. LEXIS 66359, *17 (M.D. Tenn. Apr. 16, 2013) ("'Costs of preparing and sending a QWR' and 'the costs of filing suit will not satisfy' this actual damages requirement"); *In re Grandberry v. Bank of America, N.A.*, No. 109-07056, Adv. No. 112-90611, 2013 Bankr. LEXIS 5242, *12 (M.D. Tenn. Bankr. Dec. 13, 2013) ("Nor does the cost of sending a QWR satisfy the actual damages requirement"); *Skaggs v. HSBC Bank USA, N.A.*, No. 10-00247 JMS/KSC, 2011 U.S. Dist. LEXIS 98057, *46-47 (D. Hawaii Aug. 31, 2011) ("Plaintiff's proffered mailing cost could not have been 'a result of'" the failure to respond to the QWR). To permit such costs or expenses as actual damages under RESPA would be to eviscerate the actual damages requirement in its entirety, since the nominal costs of every QWR would be sufficient whenever a borrower alleged a response violation. This Court should not be the first to embrace such an obvious departure from the statutory text and common sense.

### c. Marais cannot prove she suffered damages resulting from alleged wrongful credit reporting

Once again, because of her inadequate Rule 26(a)(1)(A)(iii) disclosures, it is unclear whether Marais is actually claiming that she suffered actual damages as a result of Chase's

alleged credit reporting violation(s).  However, the undisputed facts do make clear that Marais cannot prove such damages even if she claims them.

Importantly, it is well-established that mere wrongful credit reporting, even if it is alleged to have been inaccurate, will not be sufficient to sustain a claim for "actual damages" unless some tangible harm resulted from the reporting of the information.  See, *Ray v. Equifax Info. Servs., LLC*, No. 08-10879, 2009 U.S. App. LEXIS 7810, **15 (11th Cir. April 13, 2009) (interpreting FCRA); *Ruffin-Thompkins v. Experion Info. Solutions, Inc.*, 422 F.3d 603, 608 (7th Cir. 2005) (same); *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001) (same); *Casella*, 56 F.3d at 474; *Giannetta v. Boucher*, No. 92-1488, 1992 U.S. App. LEXIS 33313, *9-13 (1st Cir. December 22, 1992) (same); *Johnstone*, 173 F.Supp. 2d at 816-17 (drawing the same conclusion with respect to RESPA).

First, Marais does not even allege, let alone have evidence, that her credit rating was adversely affected by the alleged wrongful reporting or that she suffered any pecuniary injury as a result of such reporting.  Marais did not identify in her written discovery responses any alleged damages that were supposedly associated with credit reporting in any way.  *See, e.g.*, Rog Responses, #'s 8, 16.  In fact, she could not even identify a single instance of credit reporting itself that she claims violated RESPA.  *Id*. at #'s 14-15.  As such, she cannot prove that she suffered actual damages as a result of a violation.  *Pickens*, 2013 U.S. Dist. LEXIS 115377 at *26 (the plaintiff has the burden to point to specific evidence showing damages in order to survive summary judgment).

Second, Marais cannot prove that Chase ever reported her loan *inaccurately*, even if she could show (which her discovery responses reveal, she cannot) that Chase reported her account as past due during the 60-day credit protection period with respect to a protected payment, as set

forth in § 2605(e)(3).  This is significant, not only because the credit reporting she alleges does not constitute a violation in the first place (because reporting of her overdue December 2010 payment is not protected under RESPA—see, *supra*), but also because under RESPA, even if the parties still disagree about the accuracy of the account after the credit protection period concludes, the servicer is free to resume regular reporting, *i.e.*, to eventually make the very report that Marais alleges was improper due solely to its timing.  *See*, 12 U.S.C. § 2605(e)(2)(B), (e)(3). *Cf. Vassalotti*, 732 F.Supp. 2d at 509 (holding that a servicer's belief about the account need not be correct to comply with the QWR response obligations).

Thus, Marais cannot prove that her credit was uniquely and adversely affected due to wrongful reporting of a protected payment during the credit protection period, ***and*** that she subsequently suffered actual, pecuniary injury as a result of a third party's knowledge and/or use of her credit report ***during that period***.  As a result, she cannot show actual damages resulting from Chase's alleged wrongful reporting, and Chase is entitled to summary judgment.

## VI.    CONCLUSION

The undisputed facts show that Chase's response to Marais' QWR was legally compliant with RESPA; that Chase did not violate the RESPA credit reporting moratorium; and that even if Chase had violated RESPA, Marais suffered no damages as a result of Chase's alleged failure to comply.  There is no genuine issue of material fact to be tried in this case, and Chase is entitled to judgment as a matter of law.  As a result, Chase respectfully requests that this Court issue an Order granting Chase a complete summary judgment as to the remaining claim in this action.

Respectfully submitted,


/s/ Daniel C. Gibson
Daniel C. Gibson (0080129)
Bricker & Eckler LLP
100 South Third Street
Columbus, Ohio 43215
Telephone: (614) 227-2300
Facsimile:  (614) 227-2390
dgibson@bricker.com
Trial Attorney for Defendant JPMorgan Chase Bank, N.A.,
successor by merger to Chase Home Finance LLC


OF COUNSEL:

Nelson M. Reid              (0068434)
Bricker & Eckler LLP
100 South Third Street
Columbus, Ohio 43215-4291
Telephone:  (614) 227-2300
Facsimile:  (614) 227-2390
Email:  nreid@bricker.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of February, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF electronic system.  Parties were served electronically by the Court's CM/ECF electronic system.

/s/ Daniel C. Gibson
Daniel C. Gibson (0080129)